IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGEIA MORENO, GEORGIA MORENO, on behalf of her minor son, T. MORENO, and her minor daughter, B. MORENO, DARLENE STAYMATES, and MARK STAYMATES,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PITTSBURGH, CHIEF OF POLICE NATHAN HARPER, OFFICER MICHAEL REDDY, OFFICER BRIAN NICHOLAS, OFFICER WILLIAM FRIBURGER, OFFICER DOUGLAS EPLER, OFFICER DONALD P. GORHAM, OFFICER JOSEPH NOVAKOWSKI, OFFICER LISA KOLARAC, OFFICER GLENN HAIRSTON, OFFICER NEAL MARABELLO, LIEUTENANT JOSEPH TERSAK, OFFICER NATHANIEL BURTT, OFFICER ERIK ENGLEHARDT, OFFICER WADE SARVER, and OFFICER CARL MOROSETTI<br><br>Defendants. | Civil Action No. 12-615<br>Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

This is a civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of Plaintiffs' constitutional rights stemming from a SWAT team raid on December 7, 2010. (Docket No. 56). Presently before the Court is Defendants Tersak, Burtt, Englehardt, Sarver, and Morosetti's ("SWAT Defendants") Partial Motion to Dismiss (Docket No. 57) Plaintiffs' Second Amended Complaint (Docket No. 56), wherein SWAT Defendants argue the Plaintiffs' claims against them are time barred by the statute of limitations, and that Plaintiffs have failed to state a claim against Defendant Morosetti. This motion has been fully briefed. (Docket No. 58, 81, 84, 89). Upon consideration of the parties' submissions, the relevant authority, and the well-pled allegations in

1

Plaintiffs' Second Amended Complaint, (Docket No. 56), which are taken as true and viewed in the light most favorable to Plaintiffs, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), SWAT Defendants' Motion [57] is DENIED for the reasons that follow.

**I. Minor Plaintiffs' Claims**

SWAT Defendants first argue that the Plaintiffs are barred from adding them as additional Defendants in their April 5, 2013 Second Amended Complaint, because the statute of limitations as to these SWAT Defendants allegedly expired as of December 7, 2012. (*See* Docket Nos. 56; 58 at 4-8). For actions brought pursuant to 42 U.S.C. § 1983, Pennsylvania's two-year statute of limitations applies, as well as Pennsylvania's tolling rules. *Jacobs v. Sec'y Pennsylvania Dep't of Corr.*, Civ. A. No. 10-3792, 2013 WL 602455, *2 (3d Cir. Feb. 19, 2013). However, as to minor Plaintiffs, T. and B. Moreno, it is well-established that if an individual entitled to bring a civil action is a minor at the time the cause of action accrues, the statute of limitations for the action does not begin to run until those individuals reach the age of eighteen. 42 PA. CONS. STAT. ANN. § 5533(b)(1).[1] Thus, the claims by Plaintiffs T. Moreno and B. Moreno, presently ten (10) and four (4) years old respectively, are not time barred. *Id.*

The Court notes that while "[i]t is improper for a party to present a new argument in [a] reply brief," *Soo San Choi v. D'Appolonia,* 252 F.R.D. 266, 269 (W.D. Pa. 2008), to the extent the SWAT Defendants argue minor Plaintiffs have not pled a valid constitutional violation, the Court does not agree. In the Second Amended Complaint, minor plaintiffs allege a SWAT team raided their family home by breaking down a door, shouting obscenities at them and forcing them to stand with rifles pointed in their faces. (Docket No. 56 at ¶ 16-18, 24, 28-31). Additionally, T. Moreno states he was dragged from the bathtub by Defendant Burtt, injuring his ankles, and then was forced to stand naked in the hallway with his sister. (Docket No. 56 at ¶

---

[1] Defendants seemingly concede this point, as they do not discuss this point in their Reply. (Docket No. 84).

25). Police officers may be liable under § 1983 for the use of excessive force and unlawful searches under the Fourth Amendment which "guarantees citizens the right 'to be secure in their persons…against unreasonable searches and seizures of the person."[2] *See Adams v. Springmeyer,* Civ. No. 11-790, 2012 WL 1865736 (W.D. Pa. May 22, 2012) (Fischer, J.) (citing *Rivas v. City of Passaic,* 365 F.3d 181, 198 (3d Cir. 2004)); *see also Simonton v. Tennis,* 437 F. App'x 60, 64 (3d Cir. 2011).[3] Further, it is well-settled that "[m]inors, as well as adults, are protected by the Constitution and possess constitutional rights."[4] *Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health,* 503 F.3d 256, 261 (3d Cir. 2007) (citing *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52 (1976)). Accepting as true all of the well-pled allegations in favor of the Plaintiffs, the Second Amended Complaint sufficiently sets forth claims of constitutional violations. *See Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1194 (10th Cir. 2001) (explaining that "[t]he 'SWAT' designation does not grant license to law enforcement officers to abuse suspects or bystanders, or to vent in an unprofessional manner their own pent-up aggression, personal frustration or animosity toward others").

## II. Adult Plaintiffs' Statute of Limitations

---

[2] "Section 1983 imposes civil liability upon any person who, under color of state law, deprives someone of the rights, privileges, or immunities secured by the federal Constitution or the laws of the United States." *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir. 2000)); 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Simpson v. Nicklas,* 500 F. App'x 185, 188 (3d Cir. 2012)(internal citations omitted).

[3] Defendants' reliance on *Bryant v. City of Philadelphia* is unpersuasive, primarily because that decision was made following a bench trial, after which the District Court had made findings of fact wherein it found "Defendants' version of the facts more persuasive than [Plaintiff's]." 12-3678, 2013 WL 1010640 (3d Cir. Mar. 15, 2013). Those disputed facts included the contention by the Plaintiff that the search lasted over an hour, while the Defendants argued the search lasted 15-30 minutes. *Id.* The District Court also found that there was no evidence of excessive force. *Id.* The District Court's decision and Circuit Court's subsequent affirmance were based on the specific circumstances presented and supported by evidence in that bench trial. Presently before the Court is a motion to dismiss, and as such all allegations in Plaintiffs' Second Amended Complaint, (Docket No. 56), are taken as true and viewed in the light most favorable to Plaintiffs, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] The searches of the minors' person are at question here and thus Defendants' argument that minor Plaintiffs have no standing as to property damages is irrelevant. (Docket No. 84 at 2).

For the adult Plaintiffs, because the search occurred on December 7, 2010, the two-year statute of limitations generally expires as of December 7, 2012. *See Singer v. Bureau of Prof'l & Occupational Affairs*, 12-4384, 2013 WL 3032176 (3d Cir. June 19, 2013) (§1983 claims in Pennsylvania borrow the personal injury two-year statute of limitations). Plaintiffs filed their Original Complaint on May 9, 2012, wherein Defendants John Does 1-10 were described as the police officers who participated in the December 7, 2010 raid. (Docket No. 1). On October 26, 2012, the City of Pittsburgh provided Plaintiffs with a list of officers that were on the SWAT team who participated in the raid. (Docket No. 58 at 2). On April 12, 2013, after depositions of certain of these officers, Plaintiffs filed their Second Amended Complaint, naming Tersak, Burtt, Englehardt, Sarver, and Morosetti as Defendants in place of the "John Does" identified in the Original Complaint. (Docket Nos. 1, 56). Where the statute of limitations has expired, a plaintiff may only name a new party if the plaintiff demonstrates that the new claim or party relates back to the filing date of the original complaint. *Garvin v. City of Phila.,* 354 F.3d 215, 220 (3d Cir. 2003). Under Federal Rule of Civil Procedure 15(c)(1), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c). Rule 4(m) prescribes a 120-day time period from the filing of the original complaint for service of same on a defendant. FED. R. CIV. P. 4(m).

   A. *Requirements of 15(c)(1)(C)(i)*

The disputes between the parties do not center on the potential application of Rule 15(c)(1)(A) or (B), as the Original Complaint and the Second Amended Complaint are almost identical; instead, they focus on Rule 15(c)(1)(C). (Docket Nos. 1; 56). Notice under 15(c)(1)C)(i) can be either actual or imputed. *Garvin*, 354 F.3d at 222. Knowledge can be imputed by either (1) the "shared attorney" method, whereby the unnamed defendant received notice because of sharing an attorney with the originally named defendant, or (2) by "identity of interest," whereby he received notice since he had interest of identity with an originally named defendant. *Id.*

In this case, the original officer Defendant, Michael Reddy and the SWAT Defendants are all represented by Bryan Campbell, Esquire. The SWAT Defendants argue they did not receive notice of the action in the 120 day notice period prescribed by Rule 15(c)(1)(C), i.e. by September 9, 2012. (Docket No. 58 at 6). In *Garvin,* the Third Circuit rejected the Plaintiff's assertion of imputed notice via the "shared attorney" method, because the plaintiff had not provided any evidence that gave rise to the inference that there was "some communication or relationship between the shared attorney and the John Doe defendant prior to the expiration of the 120-day period." *Garvin*, 354 F.3d at 225.[5] This is not the case here, as Plaintiffs have shown that Defendant Reddy's Original Answer filed on July 11, 2012 (before the 120 day

---

[5] Moreover, the Third Circuit specifically noted in *Garvin* that the Plaintiff had been given the "opportunity to take discovery on the communications between the City Solicitor's office and the four officers she sought to substitute for the John Doe named in the original complaint but did not do so." 354 F.3d at 222. Here, it is not clear to this Court whether the Plaintiffs have taken any discovery as to the communications between Bryan Campbell, Esq. and SWAT Defendants. Rather Plaintiffs rely on the Original Complaint, Defendant Reddy's Answer and cited deposition testimony, which the Court finds sufficient, to infer some communication or relationship between Brian Campbell Esq. and the SWAT Defendants.

5

period had ended) and his subsequent testimony at his deposition, give rise to such an inference. (Docket No. 81).

As noted, Defendant Reddy's Answer was filed on July 11, 2012. It contained specific facts about the December 7, 2010 raid of which Defendant Reddy later testified he had *no* personal knowledge. (Docket No. 81-1). First, paragraph 26 of the Answer states "some of the officers proceeded throughout the house to find the remaining occupants and ensure the safety of everyone within the house and check for weapons." (Docket No. 11 at ¶ 26). However, Defendant Reddy admitted to not being present at the initial SWAT entrance. (Docket No. 81-1 at 6-7). Secondly, Paragraph 22 of the Answer states "[i]t is admitted that the SWAT officers came through the rear sliding glass door and it was broken, however this was performed in accordance with SWAT practices and procedures." (Docket No. 11 at ¶ 22). Defendant Reddy testified that while he knows the general SWAT procedure for such entries, he was not actually present when the door was broken. (Docket No. 81-1 at 6). Thirdly, while Defendant Reddy states he "did not in any way participate" in the decision to the use the SWAT team, his Original Answer stated "Defendants were further aware of William Moreno's significant history of criminal convictions and violence, including the use of weapons. It was determined that the use of a SWAT team was best to effectuate the arrest of William Moreno with the minimal risk of injury…" (Docket No. 81-1 at 1, 7; Docket No. 11 at ¶ 29). Fourth, Defendant Reddy's Answer contains other statements regarding facts that would have been only known to the SWAT team members involved in the initial raid. (*See* Docket No. 11 at ¶¶ 19, 21, 24). Yet, his Answer also avers that in response to certain SWAT team allegations, "after reasonable investigation," he was without sufficient knowledge to answer. (*Id.* at ¶¶ 20, 22, 23, 27). Given these details, it appears that defense counsel may have secured information from other sources, likely the SWAT officers

involved in the raid, to craft Defendant Reddy's Answer.[6] In the Court's estimation, these facts suggest that in investigating the facts and circumstances of the alleged raid as required by Rule 11 to prepare the July 11, 2012 Answer, Attorney Brian Campbell had some communication or relationship with the John Doe/SWAT Defendants before September 9, 2012. *See* FED. R. CIV. P. 11(b).

Rule 15(c)(1)(C)(i) also requires the Court to determine whether the newly named Defendants have been prejudiced. *Brever v. Federated Equity Mgmt. Co. of Pa.*, 233 F.R.D. 429, 435 (W.D. Pa. 2005) (Cercone, J.) ("the notice inquiry is designed to eliminate prejudice that would result from having to assemble evidence and construct a defense after a claim has become stale"). SWAT Defendants have not stated in any of their briefings why or how they would be prejudiced in defending against this matter.[7] Upon the Court's review there appears to be no risk of same because Defendants' counsel has had access to any and all evidence regarding the allegations in the Second Amended Complaint throughout discovery, as he has participated in this matter since at least July 11, 2012. (Docket No. 12); *see Nelson v. Cnty. of Allegheny,* 60 F.3d 1010, 1015 (3d Cir. 1995) (because Plaintiffs' alleged "injury by the same conduct described in the original pleading, the evidence relevant to a defense against these new claims would be the same as the evidence relevant to a defense against the original claims"). Indeed, fact discovery in this case is not closed until August 5, 2013, (Docket No. 88), and there has been no indication to this point from the SWAT Defendants they have been unable to assemble evidence in their defense. *See Smith v. City of Philadelphia*, 363 F. Supp. 2d 795, 802 (E.D. Pa.

---

[6] During Defendant Reddy's deposition, when asked if the July 11, 2012 Answer was "his" Answer, Attorney Brian Campbell spoke up stating "well, technically, it is my answer." (Docket No. 81-1 at 5).

[7] The Court also notes that the SWAT Officers, like Defendant Reddy, may be entitled to indemnification from the City of Pittsburgh in the event of a verdict against them. *See* Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, *et seq;* (Docket No. 60 at ¶ 42).

2005).[8]

B. *Requirements of 15(c)(1)(C)(ii)*

The SWAT Defendants "knew or should have known that the action would have been brought against [them], but for a mistake[9] concerning the proper party's identity," under Rule 15(c)(1)(C)(ii), because Plaintiffs alleged the raid events with specificity in the original May 9, 2012 Complaint, giving the time and place of the raid, detailed acts of excessive force, even specific comments of officers during the raid, and only failed to identify the officers by name. (Docket No. 1 at ¶¶16, 27, 24) It is clear that the Plaintiffs challenged the constitutionality of the acts taken by the SWAT team in their Original Complaint of May 9, 2012. (Docket No. 1) While Plaintiffs had to go through extensive discovery to determine the identity and roles of the masked SWAT officers (¶ 18), such information was more easily available to the SWAT Defendants. This is in contrast to cases in which identity and roles of potential parties are readily known before discovery. *See Nelson,* 60 F.3d at 1015 (affirming the dismissal of two plaintiffs since Plaintiffs sought to join a civil suit regarding anti-abortion protests but they could not demonstrate any mistake regarding their *own* roles in the protests to justify relation-back). Likewise, Plaintiffs have argued that Daniel Hartung's Deposition shows SWAT Defendants

---

[8] The Court notes that notice can be imputed by the "identity of interest" method, whereby Defendants "are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation." *Garvin,* 354 F.3d at 227. However, under this method, "a non-management employee ... does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule 15(c)(3) purposes." *Garvin,* 354 F.3d at 227. As it is not clear from the record before the Court whether the SWAT Defendants or Defendant Reddy hold any supervisory positions, the Court cannot say with certainty that this method applies. In any event, the Court has found that the SWAT Defendants received constructive notice through the shared attorney method.

[9] In the Third Circuit, Plaintiffs' lack of knowledge on the identities of defendants and subsequent amendment of "John Does" meets the requirements of a "but for a mistake" under Rule 15(c)(3). *See Singletary v. Pennsylvania Dep't of Corr.,* 266 F.3d 186, 200–01 (3d Cir. 2001) (noting that a "mistake" can be when a plaintiff lacked knowledge of the identity of a John Doe defendant when the original complaint was filed); *see also DiLauri v. Mullen,* 477 F. App'x 944, 947 (3d Cir. 2012). Here the Plaintiff did not know the identity of the officers in the raid at the time of the original complaint, and only through discovery were they able to identify their roles. (Docket No. 89).

knew they were likely defendants. Apparently, in his deposition, Daniel Hartung testified that he had a discussion with Defendant Burtt at the time of the Original Complaint "that they 'were involved in some capacity' and that 'we were going to be here someday' (referreing to the deposition)." (Docket No. 89 at 5) (citing Hartung Depo at 48-9). The Rule 15(c)(1)(C) inquiry is not whether Plaintiffs knew or should have known the identity of the proper defendant(s), but whether SWAT Defendants should have known they would have been defendants but for an error or mistake. *Krupski v. Costa Crociere S. P. A.,* 130 S. Ct. 2485, 2494, 177 L. Ed. 2d 48 (2010) ("a plaintiff might know that the prospective defendant exists but nonetheless harbor (sic) a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied."). Considering all of the facts in this case,[10] the Court finds that, the SWAT Defendant either knew or should have known they could become defendants in this matter. Thus, the adult Plaintiffs' claims are not time-barred against these SWAT Defendants.

### III. Claims as to Defendant Morosetti

Finally, Defendant Morosetti argues that Plaintiffs have failed to state a claim against him because he was only involved in procuring the arrest warrant of William Moreno and did not participate in the actual raid. (Docket No. 58 at 8-10). Plaintiffs allege that Defendant Morosetti played an integral and active part in the execution of the arrest warrant and raid at Plaintiffs' home. (Docket No. 56 at ¶13) (claiming that Defendant Morosetti obtained the arrest and search

---

[10] Although not dispositive, the Court is also mindful of the press coverage this matter received at the filing of the Original Complaint in May, 2012. *See* Rich Lord, *Pittsburgh Family Sues Police Over 2010 Raid on their Home*, Pittsburgh Post Gazette (May 10, 2012), available at http://www.post-gazette.com/stories/local/neighborhoods-city/pittsburgh-family-sues-police-over-2010-raid-on-their-home-635185/; *see also* Brian Bowling, *Lawsuit Claims Pittsburgh SWAT Team Injured Family, Damaged Property*, Pittsburgh Tribune-Review (May 10, 2012), available at http://triblive.com/home/1561937-74/police-moreno-family-fight-officers-brien-lawsuit-officer-claims-forcing#ixzz2ZPLFj6ly.

warrant for William Moreno and his home, despite knowing that Moreno would have voluntarily turned himself in). The Court has already pointed out that the events surrounding the raid, as pled, give rise to plausible claims of constitutional violations.[11] *See also Perez v. Borough of Berwick*, 507 F. App'x 186, 192 (3d Cir. 2012) (failing to knock-and-announce, unreasonable scope and length of search, and excessive force in entering the home are all grounds for constitutional violations). Conceding that Morosetti was not present at the time of the arrest, the Court notes that a "police officer may be liable for excessive force under section 1983 even where he did not personally use excessive force or direct others to use it." *Adams*, 2012 WL 1865736 at *12 (citing *Baker v. Monroe Twp.,* 50 F.3d 1186, 1193–94 (3d Cir.1995)); *see also Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011). Determining such liability is a fact specific inquiry directed to the individual police officer's authority, supervision, knowledge and role in such a raid. *Id.* Accordingly, if the Court accepts Plaintiffs' factual allegations as true and considers them in their favor. as the Court must do at the motion to dismiss stage, then Plaintiffs have alleged sufficient facts to support a §1983 claim against Morosetti. Once discovery has concluded, Morosetti can renew his arguments, if appropriate, at the summary judgment stage.

---

[11] In their briefs, Defendants insert additional facts about Defendant Morosetti's role in the raid, his knowledge regarding William Moreno's intent to turn himself in and details regarding William Moreno's criminal history, in arguing that the raid was a reasonable search. (Docket No. 58 8-12; 84 at 4-5). However, such facts are considered outside the pleadings, *see* Fed. R. Civ. P. 12(d), and thus, beyond the scope of the Court's review of the allegations in Plaintiffs' Second Amended Complaint to resolve a motion to dismiss s*ee Iqbal,* 556 U.S. 662 ; *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, (2008).

## IV. Conclusion

Accordingly, Defendants Tersak, Burtt, Englehardt, Sarver, and Morosetti's Partial Motion to Dismiss, (Docket No. 57), is DENIED.

An appropriate order to follow.

                                        *s/Nora Barry Fischer*
                                        Nora Barry Fischer
                                        United States District Judge

Date: July 22, 2013
cc: All counsel of record